# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
#### No. 5:24-CV-259-D

JOHN DOE,                              )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )              **ORDER**
                                       )
NASH COUNTY BOARD                      )
OF EDUCATION, et al.,                  )
                                       )
                    Defendants.        )

On May 3, 2024, John Doe ("Doe" or "plaintiff") filed a complaint against the Nash County Board of Education ("the Board"), Board Superintendent Steven Ellis ("Ellis") in his individual capacity (together "the Board defendants"), former Rocky Mount High School Principal Daniel Colvin ("Colvin") in his individual capacity, and former Rocky Mount High School teacher Marquis Johnson ("Johnson") in his individual capacity [D.E. 1]. On June 20, 2024, the Board defendants moved to dismiss the complaint [D.E. 19]. See Fed. R. Civ. P. 12(b)(6). On June 27, 2024, Colvin moved to dismiss the complaint [D.E. 25]. See Fed. R. Civ. P. 12(b)(6).

On July 11, 2024, Doe filed an amended complaint [D.E. 27]. In Doe's amended complaint, Doe alleges: (1) a substantive due process claim under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution against Johnson and the Board, (2) a retaliation claim under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution against Ellis, Colvin, and the Board, (3) a sex discrimination claim under 20 U.S.C. §§ 1681(a) et seq., ("Title IX") against Johnson and the Board, (4) a Title IX retaliation claim against the Board, (5) a supervisory liability claim under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution against Ellis, (6) a supervisory liability claim under

42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution against Colvin, (7) an assault claim under North Carolina law against Johnson, (8) a battery claim under North Carolina law against Johnson, and (9) a claim against the Board and Johnson under the North Carolina Constitution. See [D.E. 27] Am. Compl. ¶¶ 115–200. Doe seeks compensatory and punitive damages. See id.

On August 1, 2024, Colvin moved to dismiss the amended complaint [D.E. 33] and filed a memorandum in support [D.E. 36]. See Fed. R. Civ. P. 12(b)(6). The same day, the Board defendants moved to dismiss the amended complaint [D.E. 34] and filed a memorandum in support [D.E. 35]. See Fed. R. Civ. P. 12(b)(6). On September 10, 2024, Doe responded in opposition to both motions to dismiss the amended complaint [D.E. 42]. On September 23, 2024, Colvin replied [D.E. 45]. On October 1, 2024, the Board defendants replied [D.E. 46]. On February 3, 2025, Doe moved for entry of a default judgment against Johnson [D.E. 48]. As explained below, the court grants Colvin's renewed motion to dismiss, grants in part the Board defendants' renewed motion to dismiss, and grants Doe's motion for entry of default judgment against Johnson.

I.

In August 2021, the Board hired Johnson, an adult male, as a Rocky Mount High School teacher. See Am. Compl. ¶ 11. While at Rocky Mount High School, "Johnson engaged in inappropriate sexual behavior with at least three students, actions for which he has been charged criminally." Id. at ¶ 64. In March 2022, Johnson started using sexually explicit language in class and in one-on-one conversations with students. See id. at ¶¶ 65–67. In September 2022, several sexually explicit texts between Johnson and a student "circulated around the school." Id. at ¶ 68. Shortly thereafter, an individual complained to school officials about Johnson's . . . inappropriate sexual remarks and contact with a student." Id. at ¶ 69. Around this time, Johnson's ex-girlfriend

wrote a letter to Rocky Mount High School claiming Johnson had "sexual proclivities towards male children," that Johnson had been expelled from a church in Colorado due to his inappropriate conversations and interactions with young boys . . . , and that [Johnson] was continuing those same actions in North Carolina." Id. at ¶ 71. Doe alleges the Board, Ellis, and Colvin did not investigate these complaints. See id. at ¶¶ 70, 72.

Beginning in September 2022, Doe, a 17-year-old male student, was enrolled in one of Johnson's classes. See id. at ¶ 9. Throughout the semester, Johnson sent Doe sexually explicit communications through text messages and private social media channels. See id. at ¶¶ 14–20. Doe attempted to block those electronic communications from Johnson. See id. at ¶ 20. In December 2022, Johnson told Doe to stay after school to complete missing assignments. See id. at ¶ 21. While meeting with Doe after school, Johnson repeatedly asked Doe about Doe's sexual experiences and pressured Doe to engage in sex acts with Johnson. See id. at ¶¶ 23–25. Johnson also offered Doe money for oral sex. See id. Moreover, Johnson touched Doe's shoulders, legs, thighs, and genitals. See id. at ¶¶ 26–27.

On at least one occasion, school staff observed Johnson inappropriately touching Doe after school, but did not report this interaction. See id. at ¶ 28. At some point before December 5, 2022, Doe's mother learned about Johnson's conduct. See id. at ¶ 29.

On December 5, 2022, Doe's mother reported Johnson's conduct to a secretary and an assistant principal at Rocky Mount High School. See id. at ¶ 30. Doe's mother also reported Johnson's conduct to Colvin. See id. at ¶ 31. Doe's mother provided copies of sexually explicit messages that Johnson had allegedly sent Doe. See id. at ¶¶ 31–36. Colvin responded that "he had observed Doe and Doe seemed to be fine." Id. at ¶ 38. Doe alleges Colvin did not investigate Johnson's conduct. See id. at ¶ 35. And "[r]ather than protecting Doe, Principal Colvin placed

3

Doe in a more dangerous position by informing Johnson that Doe's mother had made a complaint against Johnson while at the same time doing nothing to ensure Doe's safety." Id. at ¶ 39. Doe remained in Johnson's class. See id. at ¶ 40. While Johnson and Doe were alone in a classroom, Johnson confronted Doe about his mother's report. See id. at ¶ 41.

Throughout December 2022 and January 2023, Doe's mother repeatedly discussed Johnson's conduct with Doe's guidance counselor. See id. at ¶ 42. At some point after these discussions, Colvin instructed Doe's guidance counselor to stop communicating with Doe's mother. See id. at ¶ 62.

On January 12, 2023, Doe's mother reported Johnson's conduct to a Board assistant superintendent, and the assistant superintendent assured Doe's mother that an investigation would occur. See id. at ¶ 44. Around this time, Doe's mother also reported Johnson's conduct to Ellis, who also assured Doe's mother that an investigation would occur. See id. at ¶ 45. The Board, Ellis, and Colvin, however, "never initiated an investigation based on Doe's mother's complaint." See id. at ¶ 49. The Board, Ellis, and Colvin also refused to "put in place any protections for Doe." Id. at ¶ 54.

In 2023, Doe voluntarily stayed home from school to avoid further interactions with Johnson. See id. at ¶ 51. "Ultimately, [the Board] transferred Doe to another school." Id. at ¶ 56. At this new school, Doe was placed in a class taught by Johnson's wife. See id. at ¶ 58. The Board did not suspend Johnson "until March 2023, after Johnson's actions had been reported to law enforcement." Id. at ¶ 60.

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544,

554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the

motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts. Ltd., 551U.S. 308, 322 (2007); Phillips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

For Doe's claims arising under North Carolina law, the court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from the Supreme Court of North Carolina, this court "may consider lower court opinions[,] . . . treatises, and the practices of other states." Twin City Fire Ins., 433 F.3d at 369 (quotation omitted).[1] A federal court, however, "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Moreover, in predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted).

---

[1] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

## III.

### A.

In count one, Doe alleges that Johnson violated his substantive due process rights under the Fourteenth Amendment of the United States Constitution to personal security and bodily integrity. See Am. Compl. ¶¶ 115–35. Doe also seeks to hold the Board liable under Monell v. Department of Social Services, 436 U.S. 658 (1978). The Board does not defend Johnson's alleged criminal conduct and contends that Doe fails to state a claim under Monell.

Municipal entities cannot be held liable under section 1983 solely because they employed a tortfeasor. Rather, when a municipality is sued—directly or in an official-capacity suit—the plaintiff must plausibly allege that a policy or custom attributable to the municipality caused the violation of the plaintiff's federally protected rights. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403–05 (1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell, 436 U.S. at 690–94; King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014); Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003); Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999). There are four ways in which liability for a policy or custom may arise:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle, 326 F.3d at 471 (cleaned up).

A violation results from a municipal entity's policy or custom if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that

**7**

body's officers." Monell, 436 U.S. at 690; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121–23 (1988). Even if a section 1983 plaintiff can identify the requisite final policymaking authority under state law, however, a municipality is not liable simply because a section 1983 plaintiff "is able to identify conduct attributable to the municipality." Riddick v. Sch. Bd., 238 F.3d 518, 524 (4th Cir. 2000). Instead, a section 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." Brown, 520 U.S. at 404 (cleaned up); see City of Canton v. Harris, 489 U.S. 378, 389–90 (1989); Riddick, 238 F.3d at 524. Thus, to avoid imposing respondeat superior liability on municipalities, a section 1983 plaintiff must show that "a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Brown, 520 U.S. at 411; see Harris, 489 U.S. at 392; Riddick, 238 F.3d at 524; Carter, 164 F.3d at 218–19.

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) abrogated on other grounds by Short v. Hartman, 87 F.4th 593 (4th Cir. 2023), cert. denied, 144 S. Ct. 2631 (2024). Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action" or inaction. Brown, 520 U.S. at 410. Moreover, even if a section 1983 plaintiff can show the requisite culpability, a section 1983 plaintiff also must show "a direct causal link between the municipal action [or inaction] and the deprivation of federal rights." Id. at 404.

Doe alleges two theories of Monell liability: (1) the Board customarily ignored reports of sexual misconduct, and (2) the Board failed to properly train and supervise its employees on reporting and responding to reports of sexual misconduct. See [D.E. 42] 11. "Although prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Owens, 767 F.3d at 403. Doe has plausibly alleged a Monell claim against the Board. See Moody

v. City of Newport News, 93 F. Supp. 3d 516, 537–40 (E.D. Va. 2015); Daniels v. City of S. Charleston, No. 2:20-CV-779, 2021 WL 3624696, at *5 (S.D. W. Va. Aug. 16, 2021) (unpublished); Booker v. City of Lynchburg, No. 6:20-CV-11, 2021 WL 519905, at *4–5 (W.D. Va. Feb. 11, 2021) (unpublished). Whether this claim will survive a motion for summary judgment is an issue for another day. Cf. Smith v. Atkins, 777 F. Supp. 2d 955, 966–68 (E.D.N.C. 2011). Accordingly, the court denies the Board's motion to dismiss count one.

### B.

In count two, Doe alleges a retaliation claim under section 1983 and the First and Fourteenth Amendments of the United States Constitution against Ellis, Colvin, and the Board. See Am. Compl. ¶¶ 136–43. Defendants argue that Doe lacks standing and fails to state a claim. See [D.E. 33-1] 7–8; [D.E. 35] 13–16.

To invoke the power of a federal court, a plaintiff must demonstrate that he has standing under Article III of the United States Constitution. See Doe v. Obama, 631 F.3d 157, 160 (4th Cir. 2011); White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458–59 (4th Cir. 2005). Article III "[s]tanding implicates the court's subject matter jurisdiction." South Carolina v. United States, 912 F.3d 720, 726 (4th Cir. 2019); see Martineau v. Wier, 934 F.3d 385, 390–91 n.2 (4th Cir. 2019). To establish Article III standing, a plaintiff must show that "(1) [the plaintiff] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000) (quotation omitted); see TransUnion LLC v. Ramirez, 594 U.S. 413, 422–24 (2021); Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–

61 (1992); Doe, 631 F.3d at 160. These requirements are "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560.

A plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Md. Shall Issue, Inc. v. Hogan, 971 F.3d 199, 214 (4th Cir. 2020) (quotation omitted); see Warth v. Seldin, 422 U.S. 490, 499 (1975). The third-party standing analysis is prudential and examines, in part, whether "the third party can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." Md. Shall Issue, 971 F.3d at 215 (quotation omitted); see Sec'y of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956 (1984). For a plaintiff to have third-party standing, he must show (1) that he has a close relationship with the party whose right is asserted and (2) that something hinders the right holder's ability to assert his own interests. See Powers v. Ohio, 499 U.S. 400, 411 (1991); Md. Shall Issue, 971 F.3d at 215.

Doe lacks standing to bring the First Amendment retaliation claim in count two of the amended complaint. Doe alleges that the Board, Colvin, and Ellis retaliated against him after Doe's mother reported Johnson's sexual abuse. See Am. Compl. ¶¶ 137–38; [D.E. 42] 28–29. Doe cites several out-of-circuit cases and argues that he may assert a First Amendment retaliation claim based on his mother's speech because she is a close relative. See [D.E. 42] 28–29. A plaintiff, however, generally lacks standing to assert a First Amendment claim based on his relative's speech. See Smith v. Frye, 488 F.3d 263, 272–73 (4th Cir. 2007); Borkowski v. Balt. Cnty., 414 F. Supp. 3d 788, 815 (D. Md. 2019). Moreover, Doe fails to plausibly allege that his mother faces any obstacles to asserting her own retaliation claim. See Powers, 499 U.S. at 411; Warth, 422 U.S. at 499; Maryland Shall Issue, 971 F.3d at 215.

10

Even if Doe could overcome his third-party standing problem, Doe has not plausibly alleged a sufficient injury. Doe alleges that he "was damaged by Defendants conduct," Am. Compl. ¶ 142, but allegations of unspecified harm do not suffice. See TransUnion, 594 U.S. at 422–24; Spokeo, 578 U.S. at 338; Laidlaw, 528 U.S. at 180–88; Lujan, 504 U.S. 555, 560–61; Obama, 631 F.3d at 160. To the extent Doe argues chilled speech suffices, Doe does not plausibly allege that Doe's speech is now, or ever was, chilled through the defendants' alleged conduct. Doe merely alleges that the Board's conduct would deter "a person of ordinary firmness from reporting abuse or sexual assault in the future." Am. Compl. ¶ 140. Such threadbare pleading does not suffice. See Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 554–63. To the extent that Doe argues the increased risk of remaining in Johnson's class was harmful, retrospective risk-based harms do not suffice. See TransUnion, 594 U.S. at 437. Thus, Doe lacks standing to assert the First Amendment retaliation claim in count two.

Alternatively, even if Doe has standing, Doe fails to plausibly allege a First Amendment retaliation claim in count two. To state a First Amendment retaliation claim, Doe must plausibly allege that: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quotation omitted); see Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005); Johnson v. Allen, 416 F. Supp. 3d 550, 563 (E.D.N.C. 2018). A plaintiff "suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine, 411 F.3d at 500 (quotation omitted); see Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006). A plaintiff must plausibly allege that "defendant's conduct resulted in something more than a de

11

minimis inconvenience to [his] exercise of First Amendment rights." Balt. Sun Co., 437 F.3d at 416 (quotation omitted); Constantine, 411 F.3d at 500. As for the causal relationship, a plaintiff must plausibly allege "but-for cause." Nieves v. Bartlett, 587 U.S. 391, 399 (2019); see Bhattacharya v. Murray, 93 F.4th 675, 688 (4th Cir. 2024), cert. denied, 145 S. Ct. 443 (2024). "It is not enough that the protected expression played a role or was a motivating factor in the retaliation; [a plaintiff] must show but for the protected expression the state actor would not have taken the alleged retaliatory action." Bhattacharya, 93 F.4th at 688 (cleaned up).

As Doe concedes, Doe's claim does not stem from his protected speech, but from his mother's protected speech. See [D.E. 42] 28–29. Because Doe did not engage in protected speech, Doe fails to satisfy the first element of his retaliation claim. See Martin, 858 F.3d at 249; Constantine, 411 F.3d at 499; Allen, 416 F. Supp. 3d at 563. Moreover, Doe does not plausibly allege adverse action. Colvin's decision to tell Johnson about the report from Doe's mother falls short of "likely deter[ing] a person of ordinary firmness from the exercise of First Amendment rights." Constantine, 411 F.3d at 500 (quotation omitted); Balt. Sun Co., 437 F.3d at 416. A contrary conclusion would effectively convert a garden-variety procedural protection into an actionable retaliation claim. Furthermore, the alleged decision to stop communicating with Doe's mother is an adverse action against Doe's mother, not Doe. Any "de minimis inconvenience" on Doe's speech is not actionable. Balt. Sun Co., 437 F.3d at 416 (quotation omitted); see Constantine, 411 F.3d at 500.

Assuming without deciding that Doe's transfer to a different school qualifies as an adverse action, Doe fails to plausibly allege causation. Doe alleges that he voluntarily skipped school to avoid Johnson, but then concludes that the Board's decision to transfer him due to his absences was pretextual retaliation. See Am. Compl. ¶¶ 51, 56–57. Because Doe would have accrued these

12

absences regardless of his mother's report, Doe does not plausibly allege but-for causation. <u>See</u> <u>Nieves</u>, 587 U.S. at 399; <u>Bhattacharya</u>, 93 F.4th at 688. Alternatively, Doe omits critical dates. <u>Cf.</u> Am. Compl. ¶ 56. Without dates, the court cannot determine whether there is "some degree of temporal proximity to suggest a causal connection." <u>Constantine</u>, 411 F.3d at 501. Moreover, Doe's threadbare allegation that "upon information and belief" Johnson influenced the Board, Ellis, or Colvin to retaliate against Doe by providing meals to Rocky Mount High School faculty does not suffice. <u>See</u> Am. Compl. ¶ 59. Doe fails to plausibly allege a First Amendment retaliation claim. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678–79; <u>Twombly</u>, 550 U.S. at 570; <u>Giarratano</u>, 521 F.3d at 302. Accordingly, the court dismisses count two without prejudice.

## C.

In count three, Doe alleges a Title IX discrimination claim against the Board. <u>See</u> Am Compl. ¶¶ 144–55. In order to state a claim under Title IX, Doe must plausibly allege that: "(1) [he] was a student at an educational institution receiving federal funds; (2) [he] was subjected to discrimination or harassment based on his sex; (3) the discrimination or harassment was sufficiently severe or pervasive to create a hostile environment in an educational program or activity; and (4) there is a basis for imputing liability to the educational institution." <u>Jennings v.</u> <u>Univ. of N. Carolina</u>, 482 F.3d 686, 695 (4th Cir. 2007) (en banc). A court may impute liability to an educational institution when "an official who has authority to address the alleged discrimination and to institute corrective measures has actual knowledge of discrimination in the institution's programs and fails adequately to respond . . . ." <u>Id.</u> at 700 (cleaned up); <u>see</u> <u>Gebser v. Lago Vista</u> <u>Indep. Sch. Dist.</u>, 524 U.S. 274, 290 (1998). A failure to adequately respond "must amount to deliberate indifference to discrimination." <u>Gebser</u>, 524 U.S. at 290. "While deliberate indifference is a high standard that requires more than a showing of mere negligence . . . half-hearted

investigation or remedial action will not suffice to shield a school from liability." Doe v. Fairfax Cnty. Sch. Bd., 1 F.4th 257, 271 (4th Cir. 2021) (cleaned up); see Gebser, 524 U.S. at 290–91.

The Board focuses on the last element of Doe's Title IX claim and argues that the court cannot impute liability to the Board. See [D.E. 35] 16–22. Specifically, the Board argues that Colvin lacked sufficient knowledge or authority to institute corrective measures and that the Board's response was not deliberately indifferent. See id.

The Board does not contest that Ellis received a report about Johnson's alleged harassment of Doe and had sufficient authority to institute corrective measures. One high-ranking official with actual knowledge and authority to institute corrective measures suffices to impute liability. See Doe v. N. Carolina State Univ., 125 F.4th 498, 505–07 (4th Cir. 2025); Fairfax Cnty., 1 F.4th at 265; Jennings, 482 F.3d at 700–01. Moreover, Colvin had actual knowledge of Johnson's alleged harassment of Doe and sufficient authority to institute corrective measures.

In opposition, the Board cites Baynard v. Malone, 268 F.3d 228 (4th Cir. 2001), and argues that Colvin lacked the authority to institute corrective measures in response to the report of Doe's mother. See [D.E. 35] 19–20. In Baynard, the court explained that a school principal would have sufficient authority if he had "the power to hire, fire, transfer, or suspend teachers." Baynard, 268 F.3d at 239. Although Colvin lacked the authority to hire, fire, or suspend Johnson, Colvin had the authority to transfer Johnson to another assignment at Rocky Mount High School. See Nash County Board of Education Policy Manual § 7440, https://boardpolicyonline.com/?b=nash_county (last accessed Mar. 13, 2025). Moreover, in Doe v. Fairfax County School Board, 1 F.4th 257 (4th Cir. 2021), the Fourth Circuit rejected a similar Baynard argument and held that an assistant principal was an official with sufficient authority to impute knowledge to a school board. See id. at 265. Given Colvin's authority to make intra-

14

school transfers, Colvin had sufficient authority to institute corrective measures. See id.; cf. Gebser, 524 U.S. at 291 (noting that the high school principal was an "official"). Thus, Doe plausibly alleges that Ellis and Colvin had sufficient knowledge and authority to institute corrective measures.

As for deliberate indifference, Colvin, Ellis, and a Board assistant superintendent received reports from Doe's mother concerning Johnson's alleged conduct and failed to investigate. See Am. Compl. ¶¶ 30–31, 44–45, 49. Instead of taking corrective action, Colvin told Doe's mother that Doe "appeared to be fine." Am. Compl. ¶ 38. Moreover, Colvin informed Johnson of the report from Doe's mother and allowed Johnson to confront Doe alone in a classroom. See id. at ¶ 41. Later, the Board transferred Doe to another school and placed him in a class taught by Johnson's wife. See id. at ¶¶ 47–48. Doe has plausibly alleged deliberate indifference. See, e.g., Fairfax Cnty., 1 F.4th at 271–72; Vance v. Spencer Cnty. Pub. Sch. Dist., 231 F.3d 253, 261–62 (6th Cir. 2000) (collecting cases); Karanik v. Cape Fear Acad., Inc., 608 F. Supp. 3d 268, 286–87 (E.D.N.C. 2022); cf. B.R. v. F.C.S.B., 730 F. Supp. 3d 233, 240 (E.D. Va. 2024); Andrews ex rel. S.H. v. Bd. of Educ. of Prince George's Cnty., 513 F. Supp. 3d 648, 657–58 (D. Md. 2021). Accordingly, the court denies the Board's motion to dismiss count three.

### D.

In count four, Doe alleges a Title IX retaliation claim against the Board. See Am. Compl. ¶¶ 156–64. Title IX prohibits retaliation "against a person because he complains of sex discrimination." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005); see Aleman v. Chugach Support Servs., 485 F.3d 206, 214 (4th Cir. 2007). To state a Title IX retaliation claim, a plaintiff must plausibly allege: (1) engagement in a protected activity; (2) a materially adverse action; and (3) a causal link between the protected activity and the materially adverse action. See

Jackson, 544 U.S. at 173; Feminist Majority Found. v. Hurley, 911 F.3d 674, 693–94 (4th Cir. 2018); Doe v. Salisbury Univ., 123 F. Supp. 3d 748, 769 (D. Md. 2015). To be materially adverse, an action "must suffice to dissuade a reasonable person from making or supporting a charge of discrimination." Hurley, 911 F.3d at 694 (cleaned up).

The court "has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009). Doe has failed to plausibly allege standing to assert a retaliation claim on his mother's behalf. See Powers, 499 U.S. at 411; Warth, 422 U.S. at 499; Maryland Shall Issue, 971 F.3d at 215; Frye, 488 F.3d at 272–73; Borkowski, 414 F. Supp. 3d at 815. Like Doe's First Amendment retaliation claim, Doe's Title IX retaliation claim relies on threadbare pleading, unspecified harm, and retrospective risk. Accordingly, Doe lacks a cognizable injury. See TransUnion, 594 U.S. at 422–24, 437; Spokeo, 578 U.S. at 338; Laidlaw, 528 U.S. at 180–88; Lujan, 504 U.S. 555, 560–61; Obama, 631 F.3d at 160. Thus, Doe lacks standing to assert the Title IX retaliation claim in count four.

Alternatively, even if Doe has standing, Doe fails to plausibly allege a Title IX retaliation claim because Doe's mother, not Doe, engaged in the protected Title IX activity. Moreover, Doe does not plausibly allege adverse action. Colvin's decision to inform Johnson about the report of Doe's mother falls short of "dissuad[ing] a reasonable person from making or supporting a charge of discrimination." Hurley, 911 F.3d at 694 (cleaned up). The decision to stop communicating with Doe's mother is an adverse action against Doe's mother, not Doe.

Assuming without deciding that Doe's transfer qualifies as an adverse action, Doe fails to plausibly allege causation. The Fourth Circuit has acknowledged that Title IX retaliation claims may require a plaintiff to plausibly allege "but-for" causation. Hurley, 911 F.3d at 696 n.10; see

also Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 347–360 (2013); Burton v. Bd. of Regents of Univ. of Wis. Sys., 851 F.3d 690, 695 (7th Cir. 2017); Doe v. Belmont Univ., 367 F. Supp. 3d 732, 758–60 (M.D. Tenn. 2019). Indeed, when "evaluating Title IX retaliation claims, courts may rely on Title VII retaliation concepts." Karanik, 608 F. Supp. 3d at 287 (quotation omitted); see Hurley, 911 F.3d 674, 693–94. Doe's Title IX retaliation claim mirrors his First Amendment retaliation claim. Compare Am. Compl. ¶¶ 156–164, with Am. Compl. ¶¶ 136–143. If Title VII's "but-for" causation standard applies to Title IX retaliation claims, then Doe fails to plausibly allege causation for the same reasons that he fails to plausibly allege "but-for" causation in his First Amendment claim.

Alternatively, even if the court does not apply a "but-for" causation standard, Doe fails to plausibly allege retaliation "as a result of" the his mother's protected conduct or sufficient "causal connection." Hurley, 911 F.3d at 694; Salisbury Univ., 123 F. Supp. 3d at 769. Doe omits the date he was transferred, which precludes the court from determining whether there is sufficient temporal proximity to state a claim. See Am. Compl. ¶ 56; cf. Constantine, 411 F.3d at 501.

Alternatively, Doe fails to plausibly allege that Johnson influenced school faculty and the Board to retaliate against Doe in exchange for prepared food. See Am. Compl. ¶ 59. Thus, Doe fails to plausibly allege a causal link. See Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. Accordingly, the court dismisses count four without prejudice.

E.

In counts five and six, Doe alleges supervisory liability claims under section 1983 against Colvin and Ellis. See Am. Compl. ¶¶ 165–75. Colvin and Ellis argue that they lacked sufficient knowledge. See [D.E. 33-1] 10–14; [D.E. 35] 7–11. Liability for inadequate supervision is not premised upon respondeat superior, but upon "a recognition that supervisory indifference or tacit

authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).

To establish supervisory liability under section 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (quotations omitted). Under Shaw, the subordinate's conduct must be "pervasive," meaning that the "conduct is widespread, or at least has been used on several different occasions." Id. In order to show deliberate indifference, a plaintiff must demonstrate a supervisor's "continued inaction in the face of documented widespread abuses." Id. Furthermore, "a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." Slakan, 737 F.2d at 373; see Randall v. Prince George's Cnty., 302 F.3d 188, 206 (4th Cir. 2002). "In order to state a claim for supervisory liability, a plaintiff must plead that each supervisory defendant, through the official's own individual actions, has violated the Constitution." Doe v. Durham Pub. Sch. Bd. of Educ., No. 1:17-CV-773, 2019 WL 331143, at *9 (M.D.N.C. Jan. 25, 2019) (unpublished); see Iqbal, 556 U.S. at 676; Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008).

Doe does not plausibly allege a supervisory liability claim against Colvin or Ellis. Colvin and Ellis received knowledge of Johnson's alleged conduct from Doe's mother. One isolated event, however, fails to establish the "pattern of factual, rather than conclusory, allegations" necessary for a supervisory liability claim to survive. Durham Pub. Sch. Bd. of Educ., 2019 WL

331143, at \*8; see Shaw, 13 F.3d at 799; Armstrong v. City of Greensboro, 190 F. Supp. 3d 450, 468 (M.D.N.C. 2016).

In opposition, Doe alleges that state prosecutors charged Johnson in March 2023 with crimes concerning inappropriate contact with two other minors. See Am. Compl. ¶¶ 60, 63–65. Doe, however, does not plausibly allege that Colvin and Ellis were aware of that alleged criminal conduct while Doe was a student at Rocky Mount High School. Doe also alleges that several sexually explicit texts from Johnson were "circulating" in late 2022 at Rocky Mount High School, but fails to plausibly allege that Colvin or Ellis knew about these texts. Am. Compl. ¶ 68. Moreover, Doe alleges that Johnson's ex-girlfriend wrote a letter to Rocky Mount High School in late 2022 noting Johnson's "sexual proclivities towards male children," but does not plausibly allege that Colvin or Ellis knew about this letter. Id. at ¶ 71. Furthermore, Doe alleges that an unnamed individual complained to unnamed school officials about Johnson's "sexual remarks and contact with a student." Id. at ¶ 69. Doe, however, fails to plausibly allege that Colvin or Ellis knew about this complaint. Doe's remaining relevant allegations are conclusory. See id. at ¶¶ 165–175; cf. Shaw, 13 F.3d at 799.

Even if Doe plausibly alleges that Colvin or Ellis had sufficient knowledge that Johnson engaged in behavior that posed a pervasive and unreasonable risk of constitutional injury to citizens like Doe, Doe fails to plausibly allege that Colvin or Ellis acted with deliberate indifference. Doe alleges that Colvin failed to act after Doe's mother reported Johnson's abuse of Doe, but Doe fails to plausibly allege that Colvin did so "in the face of documented widespread abuses." Shaw, 13 F.3d at 799 (quotation omitted). The same is true for Ellis. Even viewing the amended complaint in the light most favorable to Doe, Doe does not plausibly allege that Colvin or Ellis acted with deliberate indifference. See id.; Armstrong, 190 F. Supp. 3d at 468; Durham

Pub. Sch. Bd., 2019 WL 331143, at \*9–11. Thus, Doe fails to plausibly allege a supervisory liability claim against Colvin or Ellis. Accordingly, the court dismisses counts five and six without prejudice.

F.

In count nine, Doe alleges a "privilege of education" claim under the North Carolina Constitution against the Board and Johnson. Am. Compl. ¶¶ 188–89. The Board responds that Doe fails to state a claim against it.

Under the North Carolina Constitution, "[t]he people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right." N.C. Const. art. I, § 15; S.Y. v. Sampson Cnty. Bd. of Educ., No. 7:24-CV-471, 2024 WL 4645485, at \*7 (E.D.N.C. Oct. 31, 2024) (unpublished); Deminski ex rel. C.E.D. v. State Bd. of Educ., 377 N.C. 406, 412, 858 S.E.2d 788, 793 (2021).

A plaintiff may bring a claim directly under the North Carolina Constitution without an independent cause of action. See Deminski, 377 N.C. at 413, 858 S.E.2d at 793; Corum v. Univ. of N. Carolina, 330 N.C. 761, 782, 413 S.E.2d 276, 289–90 (1992). To bring a so-called Corum claim, a plaintiff must plausibly allege that: "(1) a state actor violated his constitutional rights; (2) the claim is colorable; and (3) there is no adequate state remedy." G.D. ex rel. S.G. v. Kannapolis City Sch. Bd. of Educ., No. 1:22-CV-1001, 2023 WL 3125342, at \*7 (M.D.N.C. Apr. 27, 2023) (unpublished); see Deminski, 377 N.C. at 413, 858 S.E.2d at 793–94; Corum, 330 N.C. at 782, 413 S.E.2d at 289.

An adequate state law remedy exists if a plaintiff has "the opportunity to enter the courthouse doors and present his claim." Deminski, 377 N.C. at 413–14, 858 S.E.2d at 794 (quotation omitted). Moreover, "an adequate state law remedy exists if the remedy would

20

compensate the plaintiff for the <u>same injury</u> alleged in the direct constitutional claim." <u>Maney v. Fealy</u>, No. 1:12CV800, 2013 WL 3779053, at *9 (M.D.N.C. July 18, 2013) (unpublished) (quotation omitted) (emphasis in original); <u>Est. of Fennell ex rel. Fennell v. Stephenson</u>, 137 N.C. App. 430, 437, 528 S.E.2d 911, 916 (2000), <u>rev'd in part on other grounds</u>, 354 N.C. 327, 554 S.E.2d 629 (2001); <u>see</u> <u>Haynes v. City of Durham, N.C.</u>, No. 1:12CV1090, 2016 WL 469608, at *6 (M.D.N.C. Feb. 5, 2016) (unpublished); <u>Barrett v. Bd. of Educ. of Johnston Cnty., N.C.</u>, 13 F. Supp. 3d 502, 514 (E.D.N.C. 2014), <u>aff'd</u>, 590 F. App'x 208 (4th Cir. 2014) (per curiam) (unpublished); <u>Edwards v. City of Concord</u>, 827 F. Supp. 2d 517, 524 (M.D.N.C. 2011); <u>Taylor v. Wake Cnty.</u>, 258 N.C. App. 178, 189, 811 S.E.2d 648, 656 (2018).

North Carolina "does not recognize claims for violations of the state constitution against persons sued in their individual capacities." <u>Calloway v. City of Goldsboro</u>, No. 5:16-CV-791, 2017 WL 11746219, at *4 (E.D.N.C. Aug. 4, 2017) (unpublished); <u>Sheaffer v. Cty. of Chatham</u>, 337 F. Supp. 2d 709, 731–32 (M.D.N.C. 2004); <u>see</u> <u>Stephenson</u>, 354 N.C. at 333, 554 S.E.2d at 633; <u>Corum</u>, 330 N.C. at 787–88, 413 S.E.2d at 292–93. Thus, the court dismisses count nine against Johnson.

As for Doe's claim under the North Carolina Constitution against the Board, in <u>Deminski ex rel. C.E.D. v. State Board of Education</u>, 377 N.C. 406, 858 S.E.2d 788 (2021), the Supreme Court of North Carolina held that a plaintiff has a colorable claim under Articles I and IX of the North Carolina Constitution when a school board's deliberate indifference to ongoing harassment prevents a student from receiving an education. <u>See</u> <u>id.</u> at 415, 858 S.E.2d at 795. "Notably, the right to a sound basic education rings hollow if the structural right exists but in a setting that is so intimidating and threatening to students that they lack a meaningful opportunity to learn." <u>Id.</u> at 414, 858 S.E.2d at 794.

21

The Board attempts to distinguish Deminski and argues that "[u]nlike the Constitutional violation in Deminski — a failure to stop the bullying when it had been reported that it was occurring and interfering with the student's education — there cannot be a Constitutional violation here, where the Board did not know about the alleged harassment while it was ongoing. Once the harassment was reported to someone with the authority of the Board (the Superintendent), no further harassment or abuse occurred." [D.E. 35] 27.

Doe replies that he "was subjected to continued harassment when Defendants told Johnson about the reports and allowed Johnson to continue teaching Doe and have continued access to him; even allowing Johnson to confront Doe about his mother's reports." [D.E. 42] 46; see Am. Compl. ¶¶ 39–41. Doe plausibly alleges the Board failed to protect Doe after the Board received notice of Johnson's abusive behavior. See Am. Compl. ¶¶ 39–41. Moreover, Doe also plausibly alleges the Board's failure caused Doe to fear attending school. See id. at ¶¶ 41, 50–51. Furthermore, Doe plausibly alleges when the Board did act, it transferred Doe to a class taught by Johnson's wife, subjecting Doe to further fear and intimidation. See id.

Doe's allegations "directly impact the nature, extent, and quality of the educational opportunities made available to [Doe] as well as indicate that the [Board] failed to guard and maintain that right." Deminski, 377 N.C. at 415, 858 S.E.2d at 795 (quotation omitted). Accordingly, Doe has plausibly alleged his claim under the North Carolina Constitution against the Board, and the court denies the Board's motion to dismiss count nine against the Board.

IV.

In counts one, seven, and eight, Doe alleges substantive due process, assault, and battery

claims against Johnson. See Am. Compl. ¶¶ 115–35, 176–86.[2] Doe seeks compensatory and punitive damages. See id. at ¶¶ 196–200. Johnson defaulted on these claims by failing to respond. See [D.E. 43] 1. Doe seeks a default judgment against Johnson for a sum to be determined at a later hearing.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). If, after the entry of default, plaintiff's complaint does not specify a "sum certain" or "a sum that can be made certain by computation," the court may enter a default judgment against the defendant. See Fed. R. Civ. P. 55(b)(1)–(2).

Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); Richardson v. Bostick, No. 511-CT-3045, 2014 WL 3508916, at *5 (E.D.N.C. July 14, 2014) (unpublished); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986). However, "a default is not treated as an absolute confession by the defendant of his liability," and "the court must consider whether the unchallenged facts support the relief sought." Ryan, 253 F.3d at 780 (quotation omitted); Richardson, 2014 WL 3508916, at *5. The party seeking a default judgment is entitled to the benefit of all reasonable inferences from the evidence tendered. See, e.g., Ryan, 253 F.3d at 780; Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Courts strictly limit the party against whom a default has been entered to attack the validity of the allegations deemed proven by the default. See, e.g., Ryan, 253 F.3d at 780; Nishimatsu, 515 F.2d at 1206.

---

[2] Doe's amended complaint refers to both the assault and battery claims as count seven. See id. at ¶¶ 176–86. For clarity, the court refers to Doe's battery claim as count eight.

If the court determines that liability is established and default judgment is warranted, the court must determine damages, regardless of the damages alleged in the complaint. See Ryan, 253 F.3d at 780–81; J&J Sports Prods., Inc. v. Bullard, No. 7:12-CV-111, 2012 WL 5844807, at *1 (E.D.N.C. Nov. 19, 2012) (unpublished); Arista Records LLC v. Gaines, 635 F. Supp. 2d 414, 416–17 (E.D.N.C. 2009); Fed. R. Civ. P. 55(b)(2)(B). Although the court may conduct an evidentiary hearing to determine damages, it may instead rely on declarations or other evidence in the record to determine damages. See, e.g., American Dairy Queen Corp. v. YS & J Enters., Inc., No. 5:14-CV-151, 2014 WL 4055550, at *2 (E.D.N.C. Aug. 14, 2014) (unpublished); J&J Sports, 2012 WL 5844807, at * 1.

The well-pleaded facts contained in the amended complaint establish a basis for the relief that Doe seeks from Johnson. See, e.g., Doe v. Rosa, 795 F.3d 429, 436–37 (4th Cir. 2015); Baynard, 268 F.3d at 235 n.4; Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980); Petrisor, v. Rodger, No. 1:23-CV-552, 2025 WL 461631, at *18 (M.D.N.C. Feb. 11, 2025) (unpublished); Ferrell v. Town of Lillington, No. 5:15-CV-677, 2016 WL 3348538, at *2 (E.D.N.C. June 13, 2016) (unpublished). Moreover, the court has discretion under Rule 55(b)(2) to enter a judgment after a default has been entered. See Fed. R. Civ. P. 55(b)(2). Thus, the court grants Doe's motion for a default judgment against Johnson on counts one, seven, and eight. Because Doe does not specify damages in the amended complaint, the court will hold a hearing at a later date to determine damages. Cf. Richardson, 2014 WL 3508916, at *6.

## V.

Doe seeks punitive damages against the Board, Colvin, Ellis, and Johnson. See Am. Compl. ¶¶ 196–200. Because Doe does not plausibly state a claim against Colvin or Ellis, Doe cannot recover punitive damages against them. See, e.g., Frye v. Brunswick Cnty. Bd. of Educ.,

612 F. Supp. 2d 694, 709 (E.D.N.C. 2009). As for the Board, "punitive damages against municipal corporations are prohibited as a matter of law." Id.; see, e.g., City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Barrett, 13 F. Supp. 3d at 515; Crain v. Butler, 419 F. Supp. 2d 785, 794 (E.D.N.C. 2005); Long v. City of Charlotte, 306 N.C. 187, 208, 293 S.E.2d 101, 115 (1982), abrogated on other grounds by statute, Act of July 10, 1981, ch. 919 § 28, 1981 N.C. Sess. Laws 1382, 1402; Ripellino v. N. Carolina Sch. Boards Ass'n, Inc., 158 N.C. App. 423, 431, 581 S.E.2d 88, 94 (2003). Thus, the court dismisses Doe's claim for punitive damages against the Board, Colvin, and Ellis. As for Johnson, the court will consider Doe's request for punitive damages against Johnson at a hearing on damages.

VI.

In sum, the court DENIES AS MOOT defendants' motions to dismiss the complaint [D.E. 19, 25], GRANTS Colvin's motion to dismiss the amended complaint as to Colvin [D.E. 33], GRANTS IN PART the Board defendants' motion to dismiss the amended complaint [D.E. 34], and GRANTS plaintiff's motion for default judgment [D.E. 48]. Colvin and Ellis are DISMISSED WITHOUT PREJUDICE from the action. Counts one, three, and nine survive against the Board. The court GRANTS Doe's motion for a default judgment against Johnson on counts one, seven, and eight and will enter that judgment after holding a hearing to determine damages. The court DISMISSES WITHOUT PREJUDICE all other claims. The Board and Doe SHALL engage in a court-hosted mediation with United States Magistrate Judge Kimberly A. Swank.

SO ORDERED. This 13 day of March, 2025.

James C. Dever III<br>
JAMES C. DEVER III<br>
United States District Judge